

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-84,212-01

### IN RE STATE OF TEXAS EX REL. BRIAN RISINGER, Relator

### ORDER TO APPEAR AND SHOW CAUSE FOR UNTIMELY FILED DOCUMENT IN RAPHAEL DEON HOLIDAY'S CASES FROM CAUSE NOS. 10,423, 10,425, AND 10,427 IN THE 278TH JUDICIAL DISTRICT COURT MADISON COUNTY

**ALCALA, J., filed a dissenting statement.**

### DISSENTING STATEMENT

About a month ago, on November 18, 2015, the State of Texas executed Raphael Deon Holiday for capital murder. Holiday's execution occurred despite three factors that should have allowed him to remain alive to pursue habeas relief and to file a new clemency petition: (1) the trial-court judge withdrew Holiday's execution date based on his conclusion that Holiday had presented claims for habeas relief that warranted further litigation, (2) as I noted in my previous dissenting statement in this case, this Court's majority should have

denied the State's last-minute petition for mandamus relief because the State failed to show that the trial court's order withdrawing Holiday's execution date was ministerial in nature and that there was no adequate remedy at law, and (3) as Supreme Court Justice Sotomayor stated in her concurring statement on the night of Holiday's execution, Holiday should have been permitted to obtain new counsel to replace his federally appointed counsel who had failed to zealously represent him in his clemency proceedings and who abandoned him at the last moment, thus leaving Holiday without effective counsel in the few short days before his execution. *See Holiday v. Stephens*, 136 S. Ct. 387 (2015) (mem. op.) (Sotomayor, J., concurring). Now, after having erroneously permitted the State to execute Holiday a month ago, this Court's majority compounds the mistake by issuing a show-cause order against Holiday's pro bono counsel, Frank Blazek and William F. Carter, who stepped in at the very last minute to fill the void left by Holiday's federally appointed attorneys. Rather than commend Blazek and Carter for attempting to ensure that a death-row inmate was represented by counsel in his last days of life, this Court's majority instead orders Blazek and Carter to appear before this Court to show cause to explain why they should not be sanctioned by this Court. Because my review of the totality of the pleadings and circumstances reveals that Blazek and Carter did not violate the spirit of this Court's Miscellaneous Rule 11-003 by filing the motion to withdraw Holiday's execution date on the day of Holiday's execution, I dissent to this Court's instant show-cause order. To explain my reasoning, (1) I detail the background facts leading up to Holiday's execution, (2) I

explain, as I did in my dissenting statement issued on the night of Holiday's execution, why the State's petition for a writ of mandamus that resulted in the reinstatement of the execution warrant by this Court's majority was decided in a procedurally flawed manner and was substantively unmeritorious, and (3) I conclude that the underlying facts before us are facially inadequate to even issue this show-cause order and that the issuance of this order will detrimentally affect the legal representation of all death-row inmates facing imminent execution. I believe that publishing this dissenting statement is appropriate because it is extremely likely that this situation—a trial court seeking to withdraw its order of execution based on a last-minute motion by pro bono counsel and a resulting show-cause order related to a late filing—will occur again in the future and that this opinion will provide guidance to future litigants.

## I. Background

The State brought three charges of capital murder, in three separate indictments, for the deaths of each of the three children killed on September 5, 2000 in a fire started by Holiday. *See Holiday v. State*, Nos. AP-74,446, AP-74,447, AP-74,448, 2006 Tex. Crim. App. Unpub. LEXIS 737 (Tex. Crim. App. Feb. 8, 2006) (not designated for publication). One indictment charged Holiday with murdering more than one person during the same criminal transaction, and each of the other two indictments charged him with the murder of an individual under the age of six. *Id*. At trial and on direct appeal, Holiday was represented by appointed attorneys William F. Carter and Frank Blazek, the same two attorneys who are

the subject of the current show-cause order.

Holiday's conviction was challenged in state court on direct appeal and in an initial state habeas application. After his conviction, this Court affirmed his conviction on direct appeal in 2006. *Id.* Holiday's motions for rehearing were denied later that same year. *Id*. Also that year, the Supreme Court denied his petition for a writ of certiorari. *Holiday v. Texas*, 549 U.S. 1033 (2006) (mem. op.). While his direct appeal was pending, Holiday filed an application for state habeas corpus relief. *Ex parte Holiday*, Nos. WR-73,623-01, WR-73,623-02, WR-73,623-03, 2010 WL 1797258 (Tex. Crim. App. May 5, 2010). Holiday was represented by attorneys Gerald Bierbaum and Alex Calhoun. Without an evidentiary hearing as to Holiday's claims, this Court adopted the trial court's proposed findings of fact and conclusions of law, and it denied relief. *Id*.

Holiday's conviction was also challenged in federal habeas corpus proceedings. In 2013, Holiday filed a petition for a writ of habeas corpus in the federal district court. *See Holiday v. Stephens*, No. H-11-1696, 2013 WL 3480384, at *40, 2013 U.S. Dist. LEXIS 98004, at *125-26 (S.D. Tex. July 10, 2013). At that time, Holiday was represented by federally appointed attorneys Seth Kretzer and James W. Volberding. The district court denied relief and rejected a petition for rehearing. *Id.* In October 2014, the United States Court of Appeals for the Fifth Circuit denied a certificate of appealability as to numerous claims on which the district court had denied habeas relief. *Holiday v. Stephens*, 587 Fed. Appx. 767, 788 (5th Cir. Oct. 14, 2014). The court also denied his petition for rehearing.

*Id*. The Supreme Court then denied Holiday's petition for writ of certiorari at the end of June 2015. *Holiday v. Stephens*, 135 S. Ct. 2893 (June 29, 2015) (mem. op.).

After the culmination of the direct appeal and state and federal habeas litigation, the trial court scheduled Holiday's execution. On August 14, which was about six weeks after the Supreme Court's ruling, the trial-court judge set Holiday's execution to occur about three months later, on November 18. The judge issued a death warrant for that date. Holiday was represented by Kretzer at the hearing, but Blazek and Carter also attended the hearing.

The following month, Holiday filed a pro se motion in the federal district court over a dispute that had arisen that summer between Holiday and counsel Kretzer and Volberding, which resulted in Holiday's belief that he had been abandoned by counsel. Holiday desired further litigation to challenge his death sentence, but counsel believed that the litigation should cease. According to the record of the proceedings in the federal district court, Volberding wrote a letter to Holiday stating that the Supreme Court had denied Holiday's appeal and that the ruling "marks the end of work for your appeals." Volberding represented in the letter that neither he nor Kretzer would file any further appeals for Holiday because they did not believe that "any further appeals [would] have any chance of success." Volberding's letter also said that they would not seek clemency for Holiday due to the unlikelihood of success. Volberding's letter told Holiday that an execution date would soon be set. The letter concluded that the attorneys did not believe that any successor writ had even a remote chance of success, but they agreed to cooperate with any new counsel that

Holiday might obtain.

Faced with the appointment of lawyers who were refusing to seek clemency and declining to pursue any further litigation, Holiday sought the appointment of new counsel in the federal district court. In his letter to the court requesting the appointment of new counsel, Holiday asserted that he effectively had "no attorneys representing" him. He requested that the court appoint him new counsel "for clemency and a possible state or federal successor petition, possibly based on the *Martinez v. Ryan* case."[1] He observed that Kretzer and Volberding had "refused to argue clemency, [ ] which is a common formality if nothing more, in all death row cases where an execution warrant had been issued," and he sought a stay of execution to pursue additional litigation with the assistance of new counsel. After counsel Kretzer and Volberding opposed Holiday's request for new counsel, the federal district court denied it.

On October 19, which was less than a month before the scheduled execution, Holiday obtained pro bono counsel, Gretchen Sims Sween with Beck Redden LLP, for her assistance in obtaining new federally appointed counsel to replace Kretzer and Volberding. Sween filed both a notice of appeal and a motion to reconsider, in which she asked the federal district court to reassess its previous denial of Holiday's request for new counsel under 18 U.S.C.

---

[1] *See Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012) (holding that, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective").

§ 3599. The federal district court denied Sween's motion. In response to Sween's filing of a notice of appeal, Kretzer filed a motion asking the district court to substitute counsel and permit him and Volberding to withdraw, but Kretzer specified that pro bono counsel Sween should be Holiday's new counsel of record. Sween, however, had signed on as appellate counsel for the limited purpose of representing Holiday in his efforts to obtain substitute counsel, and she was unable to serve as appointed counsel under § 3599. Other than his agreement to the appointment of Sween, Kretzer continued to oppose Holiday's request for substitute counsel under § 3599. The district court denied Sween's motion.

In response to the allegation that they had abandoned Holiday, counsel Kretzer and Volberding filed a last-minute application on October 28 for commutation of sentence, or alternatively, reprieve from execution of death sentence with the Texas Board of Pardons and Paroles. The application largely repeated the contents of the federal writ of habeas corpus, and it was denied by the board two days before Holiday was executed.

Dissatisfied with the last-minute clemency petition filed by Kretzer and Volberding, Sween filed an appeal in the United States Court of Appeals for the Fifth Circuit challenging the district court's orders permitting their continued appointment, and she pursued a motion to stay the execution. *See Holiday v. Stephens*, 806 F.3d 334 (5th Cir. 2015) (per curiam). In response, Kretzer and Volberding, who remained Holiday's counsel of record, moved to dismiss Holiday's appeal as frivolous. *Id*. In her November 10 pleadings to the Fifth Circuit, Sween explained that, with an execution date looming, Holiday was being forced to litigate

against both the State and his own appointed counsel, Kretzer and Volberding. Sween noted that the record plainly showed that a conflict emerged by at least June 30, 2015, when Kretzer and Volberding informed Holiday of "their decision to cease working for him, invited him to find pro bono counsel to take over, then, once he turned to the district court for help, actively resisted his efforts to obtain substitute appointed counsel in time to seek various forms of relief still available to him."[2] Sween concluded that the "conflict between client and counsel has continued to escalate and is now playing out before this Court." Describing the extreme conflict between Holiday and appointed counsel, Sween stated,

> [Counsel] aligned themselves against their client before the district court and now align themselves against their client and join arms with the State while suggesting that the only attorney authorized to undertake this appeal on Mr. Holiday's behalf is somehow a rogue interloper. This Kafkaesque scenario is what breeds cynicism about the representational rights that Congress enacted and the procedural safegards that the Supreme Court has developed specifically for the capital context.

Sween additionally contended that Holiday was entitled to the appointment of "appointed counsel who are not conflicted by self-interest and thus will zealously pursue clemency proceedings and all other available post-conviction relief" on his behalf. She asserted that a "central argument in Mr. Holiday's Opening Brief is that he still has preserved claims that could be pursued in a second, but not successive, federal habeas petition, which [Kretzer and Volberding] simply abandoned." Sween additionally asserted that Holiday had habeas claims that Kretzer and Volberding preserved but failed to pursue.

---

[2] *See* "Reply to Respondent-Appellee's Opposition to Stay," Brief of Raphael Deon Holiday, No. 15-70035, Nov. 10, 2015, Fifth Circuit Court of Appeals.

On November 12, which was six days before Holiday's scheduled execution, the Fifth Circuit rejected Holiday's appeal. *See Holiday*, 806 F.3d at 335 (concluding that the district court "did not abuse its discretion in denying Holiday's motion for the appointment of new counsel," affirming its orders denying the motion for appointment of new counsel, and denying Holiday's motion for a stay of execution). Although it declined to dismiss the appeal as frivolous, as Kretzer and Volberding had sought, the Court warned Sween that subsequent attempts to displace Volberding and Kretzer would be "viewed with skepticism." *Id.* at 335 n.1.

In the late morning on November 18, 2015, the day of Holiday's scheduled execution, which was four work days after the Fifth Circuit refused to appoint new federal counsel for Holiday, Blazek and Carter, who had represented Holiday at trial, filed a "motion to withdraw or modify" the order scheduling his execution because "additional proceedings [were] necessary on a subsequent application for a writ of habeas corpus and to afford [him] an opportunity to have meaningful access to clemency proceedings." Furthermore, the motion asserted that Holiday "has at least two claims he seeks to raise in subsequent state habeas applications: (1) the trial court's admission of unreliable expert testimony as to Mr. Holiday's future dangerousness by psychiatrist Edward Gripon violated the Texas and United States Constitutions; and (2) that Mr. Holiday's right to be free from double jeopardy was violated when he was charged, convicted, and sentenced to death twice for causing the same individual's death." Holiday argued that both "claims [were] procedurally viable under Tex.

Code Crim. Proc. art. 11.071 § 5." The motion presented specific facts supporting each of these arguments.

After determining that Holiday's motion was meritorious, the trial court granted it, withdrew the previous order that had set Holiday's execution to occur that night, and recalled the warrant of execution so that the execution would not occur that night. The order explained that the trial court found that "additional proceedings [were] necessary on a subsequent application for a writ of habeas corpus under Tex. Code Crim. Proc. art. 11.071, and [the trial court was] of the opinion that the execution date now in force should be withdrawn to permit those proceedings to be filed and adjudicated."

Later that day, shortly after four in the afternoon, the State filed a motion for leave to file a petition for a writ of mandamus in this Court and a petition for a writ of mandamus challenging the trial court's order withdrawing the execution date. In its first of three arguments, the State asserted that the trial court lacked authority to impede this Court's mandate that had ordered Holiday's execution. Second, the State cited to Article 43.141 of the Texas Code of Criminal Procedure, arguing that it limited the trial court's authority to modify or withdraw an execution date to certain circumstances, and further asserting that these circumstances were inapplicable to Holiday's case. The State cited to this Court's unpublished order in *In re John R. Roach* as authority for the proposition that an active habeas pleading was necessary to invoke the trial court's authority under Article 43.141. *See In re John R. Roach*, No. WR-41,168-08 (Tex. Crim. App. June 17, 2008) (not designated

for publication). Third, the State argued that it had no adequate remedy at law due to the last-minute nature of the proceedings.

According to this Court's clerk's file marks, at 6:23 p.m., which was about two-and-a-half hours after the State filed its petition, Blazek and Carter filed a response on Holiday's behalf, in which they raised three primary arguments. First, citing to cases holding that a petition for a writ of mandamus can be granted only for acts that are ministerial in nature, they asserted that, "[b]ecause arguments to support the positions of both relator and Mr. Holiday exist, it cannot be said that the trial court had a ministerial duty to refrain from withdrawing the order setting Mr. Holiday's execution." They noted that, in contrast to *Roach*, another decision by the Court of Criminal Appeals and the practice of multiple district courts in Texas indicated that a trial court is empowered to consider and rule on a motion to withdraw an order setting an execution date under circumstances similar to those present in this case. The responsive pleading stated,

> [A]uthority subsequent in time to *Roach* reflects that a trial court is empowered to consider and rule on a motion to withdraw an order setting an execution date that is filed in advance of a subsequent habeas corpus application. *See Ex parte Cannady*, WR-25,462-07, 2010 WL 2006763 (Tex. Crim. App. May 17, 2010) (not designated for publication). In *Cannady*, "prior to filing his subsequent application in the trial court, applicant filed a motion to withdraw the order of the court setting applicant's execution date." *Id*. The trial court denied the motion opining that it was not authorized to modify or withdraw its previous order until the CCA had determined whether the requirement of Texas Code of Criminal Procedure Article 11.071, § 5 had been met. This Court observed, however, that the withdrawal "motion was authorized under Texas Code of Criminal Procedure article 43.141, and may not be ruled upon by the trial court under the dictates of that statute." *Id*. . . . . Moreover, trial courts across the State have interpreted Article 43.141 to

permit them to withdraw orders setting execution dates in precisely such circumstances and for precisely the same reasons as here. *See e.g., State v. Brown*, No. 636535 (351st Judicial Dist. Ct. Oct. 12, 2013) (unpublished) . . . (withdrawing execution date in advance of the filing of a successive habeas application); *State v. Avila*, No. 20000D01242 (41st Judicial Dist. Ct. June 18, 2013 (unpublished) . . . (modifying execution date to allow the applicant to file a successive habeas application); *State v. McCarthy*, No. F97-34795-V (292nd Judicial Dist. Ct. January 29, 2013) (unpublished) . . . (modifying execution date upon a finding that additional proceedings were necessary on a yet-to-be filed subsequent habeas application and additional time was necessary to prepare the application). Thus, arguments to support the positions of both relator and Mr. Holiday exist and mandamus will not lie.

Because of the numerous instances in which this Court has permitted modification of an execution date, and given the absence of any published authority disallowing modification of an execution date under the circumstances present in this case, counsel argued that mandamus relief was inappropriate.

Second, citing to cases holding that mandamus generally will not lie as to an issue of first impression, counsel noted that there was no published decision interpreting the trial court's authority to withdraw the scheduled execution date. They observed that the only authority offered by the State was *Roach*, an unpublished order that had no precedential value, and thus the decision could not be considered as clearly establishing any legal principle.

Third, counsel argued that *Roach* was distinguishable based on its facts. The trial court's withdrawal of the execution date in *Roach* occurred after this Court had already dismissed Roach's subsequent habeas application. There was thus no possible way that any additional proceedings could occur on Roach's application. In contrast, in Holiday's case,

the trial judge's order withdrawing the scheduled execution date anticipated that Holiday would file a subsequent application and that additional proceedings on that application would be conducted upon its filing.

At the time that Holiday's response to the State's petition was filed, Blazek filed a good-cause certificate to explain his untimely filing. Blazek explained that he was one of Holiday's trial attorneys and that he was present when the trial court set Holiday's execution date in August of 2015. At that time, Holiday's attorney, Kretzer, told Blazek that he would do everything that he could to save Holiday's life, but that he did not think that anything else could be done. Holiday expressed his desire to pursue anything that might save his life. A couple of months later, on October 9, Blazek spoke to attorney Richard Ellis, who indicated that he was considering representing Holiday for the purpose of attempting to stop his execution. Blazek explained that it was not until mid-November that he learned that Holiday had new pro bono counsel, Sween, and he sent her an email thanking her for her efforts. On November 12 or 13, Blazek learned that Kretzer and Volberding were opposing Sween's attempts to seek appointment of new federal counsel for Holiday. On November 17, Blazek was contacted by attorney Dick Burr, who advised him that the trial court had authority to withdraw the execution date and that he had been in touch with Holiday, who desired that this relief be pursued. The next morning, Blazek filed the motion to withdraw Holiday's execution date that is at issue in the present show-cause order.

Carter filed a similar good-cause certificate that indicated that, when the trial court

set the execution date, Holiday was represented by counsel. On November 18, Carter learned that Blazek was filing a motion to withdraw the execution date and joined Blazek in filing the motion.

According to this Court's clerk's file mark, this Court's majority issued its order granting relief to the State and voiding the trial court's order at 6:43 p.m., which was around twenty minutes after receiving Holiday's response and less than three hours after having received the State's petition for mandamus. This Court's majority order determined that the trial court lacked authority to rescind the warrant of execution because Article 43.141(d) limited the trial court's power to withdraw a scheduled execution to situations in which a habeas application had already been filed and, in the absence of an active filing, the trial court's order withdrawing the execution was void. The order stated,

> A trial judge has the authority to withdraw or modify a death warrant "if the court determines that additional proceedings are necessary on . . . a subsequent or untimely application for a writ of habeas corpus *filed* under Article 11.071." (Emphasis added.) Art. 43.141(d). As we have previously held, the judge had no power to consider the merits of any claims that might be raised in possible future applications without the permission of this Court. *See* Art. 11.071 § 5 and *In re John R. Roach*, No. WR-41,168-08 (Tex. Crim. App. June 17, 2008) (not designated for publication). The trial judge, therefore, was without authority to act.

This Court concluded, "[B]ecause of the time sensitive nature of these pleadings, we hold that the trial court's November 18, 2015 order withdrawing the death warrant is void, and the death warrant is still valid."

Concurrently with this Court's majority order reinstating the warrant of execution on

Holiday, I issued a dissenting statement on the basis that the trial court's withdrawal of the execution order was discretionary rather than ministerial and that the State had failed to demonstrate that it lacked any adequate remedy at law. My dissenting statement said,

> I respectfully dissent from this Court's judgment granting mandamus relief to the State and voiding the trial court's order withdrawing the execution date for Raphael Deon Holiday. Although the Court apparently concludes that the State has no adequate remedy at law and that the act it seeks to compel is a ministerial act, thereby entitling it to mandamus relief, I disagree.[3] The authority upon which the convicting court relied in withdrawing Holiday's execution date is Code of Criminal Procedure Article 43.141, which states that the convicting court "may modify or withdraw the order of the court setting a date for execution in a death penalty case if the court determines that additional proceedings are necessary on: (1) a subsequent or untimely application for a writ of habeas corpus filed under Article 11.071[.]" TEX. CODE CRIM. PROC. art. 43.141(d)(1). The convicting court withdrew Holiday's execution date in response to a motion filed by Holiday, in which he asserted that "additional proceedings are necessary on a subsequent application for a writ of habeas corpus and to afford [him] an opportunity to have meaningful access to clemency proceedings." Although the Court grants the State relief on the basis that it has a clear right to relief in this situation, it is not at all obvious to me that the plain language in Article 43.141 so clearly prohibits the judge of the convicting court from withdrawing an execution date in order to permit a death-sentenced individual to pursue additional post-conviction proceedings. *See In re Allen*, 462 S.W.3d 47, 50 (Tex. Crim. App. 2015) ("A clear right to relief is shown when the facts and circumstances dictate but one rational decision 'under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles."). Moreover, the Court does not even consider whether the State has demonstrated that it lacks any adequate remedy at law in this situation, which is an additional prerequisite to the granting of mandamus relief. *See id.* Because I conclude that the State has not made the necessary showing that it is entitled to the extraordinary remedy it seeks, I respectfully dissent.

---

[3] *See In re Allen*, 462 S.W.3d 47, 49 (Tex. Crim. App. 2015) ("Mandamus relief is appropriate only when a relator establishes (1) that he has no adequate remedy at law to redress his alleged harm, and (2) that what he seeks to compel is a ministerial act, not a discretionary or judicial decision.").

On the same night that Holiday was executed, the Supreme Court denied his petition for certiorari. *See Holiday*, 136 S. Ct. at 387-88. Justice Sotomayor wrote separately in a statement respecting the application for stay of execution and denial of certiorari. *Id*. In her statement, Justice Sotomayor noted that the federal district court had abused its discretion when it refused to appoint new counsel to replace Kretzer and Volberding. *Id*. at 387. She explained, "When Congress authorized federally funded counsel to represent clients in clemency proceedings, it plainly 'did not want condemned men and women to be abandoned by their counsel at the last moment and left to navigate the sometimes labyrinthine clemency process from their jail cells.'" *Id*. She concluded, "Yet, this is exactly what happened here." *Id*. She continued, "Although the 'interests of justice' standard contemplates a peculiarly context-specific inquiry, it surely precludes a court from rejecting a substitution motion solely because it agrees with the appointed attorneys' premonitions about clemency." *Id*. (citation omitted). She conclusively stated, "So long as clemency proceedings were 'available' to Holiday . . . the interests of justice required the appointment of attorneys who would represent him in that process." *Id*. at 387-88. But, because Kretzer and Volberding eventually filed a clemency petition on Holiday's behalf, Justice Sotomayor "reluctantly" agreed with the Court's decision to deny Holiday's petition for certiorari. *Id*. at 388. She noted, "This [clemency] application proved unsuccessful—and likely would have benefitted from additional preparation by more zealous advocates." *Id*. Justice Sotomayor did note, however, that perhaps a state court could order the parole board to reconsider its clemency

decision with new counsel who would zealously represent Holiday. *See id*. (concluding that "this Court, unlike a state court, is likely to have no power to order Texas to reconsider its clemency decision with new attorneys representing Holiday").

At around eight at night, the State of Texas executed Holiday. This Court's time for deciding his case lasted less than three hours on a single night, and further deliberations or rehearings are impossible.

The dissenting statement that I issued on the night of Holiday's execution was prepared in the few short hours from the time that I first received the filings on the State's motion and petition for mandamus until the time that this Court issued its majority order in this case. Due to the limited time, it was impossible for me to include the background facts of the case or to fully express all of my concerns about this Court's majority order in my dissenting statement, and so I am using this opportunity to more fully explain my reasoning here before addressing the current show-cause order.

## II. The State's Petition for Mandamus

As of about an hour before his scheduled execution, the warrant of execution had been lifted by the trial court and the State had no authority to carry out the sentence that evening. The execution occurred that night because this Court's majority granted the State's petition for mandamus relief within less than three hours of its filing. I conclude that this Court's actions that night were both procedurally and substantively flawed and that the trial court's order should have remained in place unaltered by this Court.

**A. The State's Petition Should Not Have Been Granted for Procedural Reasons**

This case demonstrates that civil and criminal litigants involved in mandamus proceedings receive due process through the Texas Rules of Appellate Procedure in every appellate court in Texas except the Court of Criminal Appeals. Section three of the Texas Rules of Appellate Procedure is entitled, "Original Proceedings in the Supreme Court and the Courts of Appeals." *See* TEX. R. APP. P. 52. No corresponding section exists for criminal cases in the Court of Criminal Appeals. This means that petitions for writs of mandamus are not subject to any definitive procedural rules in the Court of Criminal Appeals. Stated more starkly, this Court has promulgated no rules of appellate procedure governing an eleventh-hour petition for mandamus relief relating to a criminal defendant facing imminent execution, while a civil litigant with a petition for mandamus relief relating to a small financial claim is afforded the protections of the Texas Rules of Appellate Procedure. The absence of procedural rules like the ones that guide every other appellate court in Texas resulted in swift resolution of the State's petition with little time for meaningful consideration of the pleadings by the real party in interest and no consideration of any possible response from the respondent. Here, less than three hours transpired between the time that this Court received the State's motion and petition for a writ of mandamus and the time that this Court issued its order granting the State's requests. And only a maximum of twenty minutes could have been devoted to any consideration of Holiday's response to the State's pleadings. Furthermore, this Court granted the State's petition for mandamus without asking for or receiving any

response from the respondent, the trial court judge. Had this been a motion and petition for mandamus in a civil case or in any other appellate court, Rule 52.4 of the Texas Rules of Appellate Procedure would have required this Court to abstain from granting relief, other than temporary relief, at least until this Court had requested a response from the trial-court judge or he had filed a response. Because Holiday was facing imminent execution and his case fell within the jurisdiction of the Court of Criminal Appeals, he received none of the protections and rights from the rules of appellate procedure that are afforded to civil litigants as a matter of course. Because capital-murder cases are the only ones that require exclusive consideration by this Court, and because Section three of the rules of appellate procedure does not expressly apply to proceedings in this Court, the result is that the most serious punishment known to the law—the execution of a defendant for a capital offense—receives less due process than a civil litigant or a criminal defendant whose petition is heard in an intermediate court of appeals.

But, even in the absence of compulsory applicability of the rules of appellate procedure, this Court's majority should have, in the interests of justice and due process, applied the same procedural rules that provide due process to civil litigants seeking mandamus relief. This Court's majority should have requested a response from the respondent and temporarily stayed the execution until that response was received. Here, the trial-court judge had issued an order withdrawing the scheduled execution and recalling the warrant, and this Court's majority, at a minimum, should have afforded the judge the

opportunity to respond before reversing the trial judge's orders.

Furthermore, I believe that this Court should promulgate rules of procedure that apply to petitions for mandamus relief filed in this Court so that litigants can know the requirements for this type of pleading and so that procedural rules will not be made up on the fly when a defendant is facing imminent execution. It strains common sense that there are robust procedural rules that apply to civil litigants and to criminal cases in the courts of appeals, but that no such rules apply to the most serious criminal cases pending in the Court of Criminal Appeals. This Court should not wait until the next petition is filed in an impending execution before promulgating rules of procedure applicable to petitions for mandamus filed in this Court.

### B. The State's Petition Substantively Failed to Meet the Requirements for Petitions for Mandamus

Here, as in my original dissenting statement in this case, I conclude that the State failed to establish the substantive requirements for obtaining relief on a petition for a writ of mandamus, and thus the State's petition should have been denied. I agree with Holiday's three arguments described above in his response to the State's petition, and I additionally determine that the State failed to show that it lacked an adequate remedy at law. Because neither of the two mandamus requirements were satisfied in this case, the State's petition for mandamus relief should have been denied.

First, as I stated in my original dissenting statement and as Holiday pointed out in his responsive pleadings to this Court, a petition for a writ of mandamus can be granted only as

to acts that are ministerial in nature. Here, the trial court's order was not issued in the performance of a ministerial duty. Rather, the order was instead the result of the court's discretionary decision to consider the pleadings before it in Holiday's motion as a substantive assertion of an application for habeas relief. Applying the plain language of Article 43.141, which permits a trial court to withdraw a scheduled execution, to the substance of the pleadings filed by Holiday, the trial-court judge acted within the bounds of his discretion in withdrawing the scheduled execution date. Code of Criminal Procedure Article 43.141 provides that the convicting court "may modify or withdraw the order of the court setting a date for execution in a death penalty case if the court determines that additional proceedings are necessary on: (1) a subsequent or untimely application for a writ of habeas corpus filed under Article 11.071[.]" TEX. CODE CRIM. PROC. art. 43.141(d)(1). It is true that the plain language of the statute uses the word "filed" in reference to a habeas application filed under Article 11.071. *See id*. That plain language could be satisfied by showing that a document labeled as an application had been filed with the clerk, or, alternatively, that any document that had been filed, regardless of its label, substantively included pleadings that could be fairly characterized as a habeas application. *See In re Daniel*, 396 S.W.3d 545, 549 (Tex. Crim. App. 2013) ("It has long been our practice with respect to pleadings in extraordinary matters to look to the substance of the pleading, not its denomination."); *see also* TEX. CODE CRIM. PROC. art. 11.03 ("The writ of habeas corpus is not invalid, nor shall it be disobeyed for any want of form, if it substantially appears that it is issued by competent authority, and

the writ sufficiently shows the object of its issuance."). Thus, as long as it reasonably determined that Holiday had presented facts that substantively presented grounds for habeas relief in any document filed with the trial court, the trial court properly could withdraw the scheduled execution under the authority of Article 43.141. *See* TEX. CODE CRIM. PROC. art. 43.141(d)(1).

Here, the substance of Holiday's motion to withdraw the scheduled execution included the two claims comprising his habeas application, and he detailed the facts supporting these claims. The trial court's order granting Holiday's motion to withdraw the execution date indicated that the court considered that "additional proceedings [were] necessary on a subsequent application for a writ of habeas corpus." Appellant argued that both "claims are procedurally viable under Tex. Code Crim. Proc. art. 11.071 § 5." The motion presented facts supporting each of his arguments. Holiday's motion satisfied the plain language in the statute that permits the convicting court to modify or withdraw the order of the court setting a date for execution in a death-penalty case if the court determines that additional proceedings are necessary on a subsequent or untimely application for a writ of habeas corpus filed under Article 11.071. *See* TEX. CODE CRIM. PROC. art. 43.141(d)(1). Requiring a separate document to present the habeas application rather than considering the substance of the arguments in support of the habeas application is precisely the type of elevation of form over substance that this Court has repeatedly rejected in numerous cases. Had this Court's majority looked to the substance of the pleadings rather than their label, this

Court would have concluded, as did the trial-court judge, that the trial court had the authority under the statute to withdraw Holiday's scheduled execution. Considering the substance of his motion to withdraw the execution date, the only thing missing from Holiday's motion was the label "subsequent application for a writ of habeas corpus." I would hold that, considering this Court's jurisprudence permitting a court to look to the substance of pleadings rather than their label, the trial court could have reasonably determined that the substance of Holiday's motion presented a habeas application filed under Article 11.071 and that the plain language of Article 43.141 permitted the trial court to withdraw the execution date. And even if the trial-court judge did not expressly state this rationale in his order, given the strict requirements for granting mandamus relief, it was the State's burden to demonstrate that the trial judge's actions in withdrawing the execution date were in clear contravention of unequivocal, well-settled, and clearly controlling legal principles, which, under these circumstances, it could not do. *See In re Bonilla*, 424 S.W.3d 528, 533 (Tex. Crim. App. 2014). This case comes down to this: Holiday's execution occurred that night because he failed to file a separate piece of paper with the words "subsequent application" to incorporate the substance of his motion to withdraw the execution into a post-conviction writ application. I conclude that the trial-court judge could have reasonably made the determination that Holiday's motion to withdraw his execution date was a filing that substantively included facts that would entitle Holiday to habeas relief. In this respect, the trial-court judge's order was discretionary rather than ministerial. Furthermore, within the bounds of his discretionary

decision, the trial judge's order comported with the plain language in Article 43.141. Thus the State's petition for mandamus relief should have been denied.

Second, as Holiday asserted in his response to the State's petition, *Roach* was an unpublished order that had no precedential value. This Court wrongfully relied on *Roach* as authority in contravention to the Rules of Appellate Procedure that prohibit appellate courts from using unpublished cases as precedent. TEX. R. APP. P. 77.3. Furthermore, as Holiday noted in his response to the State's petition, *Roach* appears to be an aberration in a body of case law in which this Court has permitted a trial court to withdraw its execution order. At most, in light of the competing contrary case law from this Court, the *Roach* decision merely muddied the waters, and thus was an inappropriate basis for granting mandamus relief. *See In re Allen,* 462 S.W.3d 47, 52 (Tex. Crim. App. 2015) (holding that mandamus would not lie where a previous opinion from this Court "at a minimum, muddies the waters" so that the right to relief was not clear). The *Roach* decision, therefore, was not a proper basis for granting mandamus relief in this case.

Third, as Holiday argued in his response to the State's petition, *Roach* was factually distinguishable. As noted above, here the substance of the pleadings in the motion included facts presenting post-conviction habeas claims that had not yet been adjudicated, as compared to *Roach*, a case in which this Court had already dismissed Roach's subsequent habeas application. Even if it were binding precedent, *Roach* was easily distinguishable from the facts presented here.

With respect to the possible merits of the habeas relief intended to be sought by Holiday, I conclude that habeas relief may have been proper in one of the cases for which Holiday had been convicted and sentenced to death. As explained above, Holiday was convicted for three charges of capital murder based on three separate indictments. One indictment charged Holiday with murdering more than one person during the same criminal transaction. The other two indictments charged him with murdering an individual under the age of six.[4] Holiday was sentenced to death on all three convictions. This Court has held that a conviction violates double jeopardy, as here, when a victim's death is the basis of two capital-murder convictions. *See Ex parte Milner*, 394 S.W.3d 502, 510 (Tex. Crim. App. 2013) (holding that applicant's two convictions for attempted capital murder resulting from allegations involving the same three victims violated double jeopardy, and concluding that "only one of these attempted capital murder convictions may be upheld"); *Saenz v. State*, 166 S.W.3d 270, 274 (Tex. Crim. App. 2005) (holding that Saenz's three convictions for capital murder based on killing of more than one person during same criminal episode violated double jeopardy; because "the charges rely on the same three murders for each charge," double jeopardy was violated, and only one of Saenz's convictions was proper). Furthermore, this type of claim may be presented in a subsequent application for a writ of habeas corpus, and relief is thus appropriate even if it is not premised on new facts or new law. *See Milner*, 394 S.W.3d at 505-06. It thus appears that Holiday was executed for an

---

[4]*See Holiday v. Stephens*, No. H-11-1696, 2013 WL 3480384 (S.D. Tex. July 10, 2013); *Holiday v. State,* Nos. AP–74,446, AP–74,447, AP–74,448, at 2–5 (Tex. Crim. App. Feb. 8, 2006).

offense for which he should have been acquitted. Perhaps some might say that this is immaterial because, even assuming that he would have been granted relief as to his double-jeopardy claim, there were two convictions for which he was executed that would have remained valid. But this Court should not permit anyone to be executed when he has a colorable claim for post-conviction relief that likely would result in one of his convictions being vacated, and it would have been more appropriate to issue a stay of execution to resolve these important legal matters.

I also briefly note that the State failed in its burden to establish that it had no adequate remedy at law to redress the alleged harm. Although there are no published cases directly addressing the appealability of a trial court's order under Article 43.141, it is at least arguable that the State could have appealed the trial court's order withdrawing the execution date,[5] and, at that point, the reviewing court would have determined whether the trial court's order was proper and reversed the trial court in the event that the trial court had erred. Although it is true that the appeal would have resulted in the withdrawal of the execution that was scheduled to occur that night, the only harm from that delay would have been that the execution would be rescheduled for another day. I cannot conclude that an appeal that leads to the rescheduling of an execution so that it may occur a few months later than its scheduled date constitutes an inadequate remedy at law. *De Leon v. Aguilar,* 127 S.W.3d 1, 6 (Tex.

---

[5] *See* TEX. CODE CRIM. PROC. art. 44.01(a)(2) (permitting State to appeal trial court's order that "arrests or modifies a judgment"); *State v. Baize*, 981 S.W.2d 204, 206 (Tex. Crim. App. 1998) (a sentence is "that part of the judgment . . . that orders that the punishment be carried into execution in the manner prescribed by law").

Crim. App. 2004) (quoting *Walker v. Packer*, 827 S.W.2d 833, 842 (Tex. 1992) for the proposition that a remedy is not inadequate merely because it may involve more expense or delay than obtaining an extraordinary writ).

This Court should have delayed the execution to fully consider the merits of the State's petition rather than grant the State's petition for a writ of mandamus (1) with only about twenty minutes to consider Holiday's response to the State's petition, (2) with less than three hours to consider the State's petition, and (3) with no request for or receipt of any responsive pleadings from the respondent, the trial-court judge. This was a life-or-death decision undertaken in a few short hours and absent any procedural rules for guidance. Even if the facts of Holiday's offense cried out for the death penalty, this Court's majority should have applied its extensive case law setting forth the standard of review for petitions for mandamus relief that compelled the denial of the State's petition. And even in the absence of applicable rules of appellate procedure to guide this Court's actions that night, this Court, at a minimum, should have applied the rules that every other appellate court in Texas uses to ensure that litigants are treated fairly. I commend the trial-court judge for following the plain language of the statute and looking to the substance of Holiday's pleadings to reach his decision. It is too late for this Court to undo the events of November 18, 2015, but this Court can act to prevent some of the problems encountered here by promulgating procedural rules that would apply to future mandamus petitions filed in this Court in order to ensure that respondent judges at least have an opportunity to be heard before their orders are rendered

void. Furthermore, this Court should publish any order on which it intends to rely as precedent for future decisions, which will place litigants on notice that the ruling will be binding as to other litigants in the future.

### III. The Show-Cause Order is Wholly Inappropriate

In the instant show-cause order, this Court commands Blazek and Carter to appear and show cause to explain why they should not be sanctioned for failing to adequately justify their untimely filings, but I conclude that, in the interests of justice, this Court should use its discretion to forgo any further consideration of sanctions in this case.

The particular facts of this case show that Blazek and Carter did not exhibit the kind of flagrant disregard for the rules that would justify sanctions. Both attorneys filed good-cause statements with their pleadings in this Court. Carter's statement essentially relied on his agreement to assist Blazek in his pleadings before this Court. Blazek's statement described in detail his desire to ensure that Holiday had representation up until his execution. Blazek further explained that he was present at the August hearing when the trial court set Holiday's execution for November but that, at that time, Holiday appeared to be adequately represented by counsel. Blazek did not know that Holiday needed counsel until the day before the schedule execution.

It is clear to me that the compressed timeline was not the result of negligence or indifference on Blazek's or Carter's part. Because the Fifth Circuit had not ruled against Holiday's request for new counsel until the week before Holiday's execution, it was not

apparent until that time that Holiday would need legal representation during the week of his execution.[6] After the Fifth Circuit ruled, there were only three work days before his execution day during which Holiday could have attempted to obtain counsel from his solitary cell on death row. Blazek discovered the conflict of interest between Holiday and Holiday's court-appointed attorneys, including the fact that Holiday's counsel had opposed Holiday's efforts to obtain other counsel, on November 12 or 13. Even if Blazek and Carter had filed in the trial court within minutes of discovering Holiday's plight, they would have run afoul of this Court's seven-day rule. As it was, Holiday appealed the federal district court's denial of his motions for substitute counsel in the Fifth Circuit, and it was only after his appeal was denied that Blazek and Carter stepped in to fill the void created in the few days that elapsed after that ruling. Either three or four days after discovering the absence of counsel, Blazek became aware of the possibility of filing a motion to withdraw or modify Holiday's execution date, based on advice he received from a colleague at that time. Knowing that Holiday desired his counsel to make every effort to pursue litigation that might result in sparing his life, Blazek and Carter took the only steps possible by filing the motion to withdraw the execution on the date of the execution. Blazek and Carter's motion to withdraw the execution date was not frivolous and was granted by the trial court. It is not Blazek's or Carter's fault that Holiday's appointed attorneys refused to represent him further in the days leading up to his execution, nor is it their fault that Sween's pro bono efforts to help Holiday

---

[6]*See Holiday v. Stephens*, 806 F.3d 334 (5th Cir. Nov. 12, 2015).

secure substitute counsel were ultimately denied. Blazek and Carter were faced with the Hobson's choice of allowing Holiday to be executed without any counsel actively assisting him even though he had a likely meritorious double-jeopardy claim, or, alternatively, to file the meritorious motion to withdraw Holiday's execution date in violation of this Court's seven-day rule. By issuing show-cause orders or sanctioning pro bono lawyers who pursue meritorious claims, the seven-day rule may operate as an impediment to the purpose of the criminal courts to provide an open forum for justice.

The seven-day rule serves an important policy. The rule provides guidance for the legal community, litigants, and public about the expectations of the Court. I discussed its value in a previous case in which this Court sanctioned a pro bono attorney for zealous representation of a client condemned to death. *In re Dow*, 460 S.W.3d 151, 157 (Tex. Crim. App. 2015) (Alcala, J., dissenting). In *In re Dow*, I noted that the purpose of the rule was to ensure that a defendant had an opportunity to raise any issues pertinent to the propriety of his impending execution while ensuring that judges have an adequate amount of time in which to consider those pleadings. *Id*. I also expressed a willingness to sanction an attorney who was shown to "habitually violate this rule or if he demonstrated a continuing unwillingness to abide by it." *Id*. In *Dow*, this Court banned Dow from practicing before it for one year because he had violated this same rule, but I dissented because I thought that the sanction was disproportionate to his infraction and thus excessive. *See id*.

Here, as in *Dow*, this Court misunderstands that attorneys, as a group, are honorable

people who will abide by court rules whenever feasible. Attorneys will follow the rule because it is their ethical duty to do so. And when an attorney fails to follow the rule but provides a reasonable explanation for his late filing, the presumption should be that no show-cause order or sanction should issue because, while the rule is important, it is perhaps more important not to make the enforcement of the rule so oppressive that it discourages attorneys from being involved in these difficult cases. And, even if these attorneys were shown to have violated the seven-day rule at some point in the past, any such infractions would not persuade me that sanctions are appropriate here. The extraordinary circumstances that occurred in the week before Holiday's execution required the later intervention by counsel, regardless of any history of late filings in this Court.

Sanctioning Blazek and Carter "carries with it the possibility of a chilling effect on attorneys who might otherwise be willing to represent capital-murder defendants who are facing execution and are in need of competent counsel." *Id.* at 156. Furthermore, as I previously observed,

> These inmates are usually indigent and rely on attorneys who are willing to represent them pro bono. These attorneys often are not brought into the case until some late stage prior to an execution, and they must review a voluminous record of prior litigation before filing any pleadings. While this Court's rules requiring timely pleadings are necessary to ensure that those pleadings are given proper consideration, this Court should not so stringently enforce the rules so as to discourage pro bono representation of defendants.

*Id.* I reiterate my statements in *Dow* relative to Blazek and Carter. Rather than be sanctioned for filing late, they should be commended for filing at all. They undertook to represent

Holiday in his last days with no expectation of compensation, after Holiday's court-appointed attorneys had, for all intents and purposes, abandoned him. For this Court to punish and condemn such conduct sends a strong message to attorneys not to undertake late-stage death-penalty cases no matter how desperately the client may need representation and no matter that the client has a likely claim meriting habeas relief.

## IV. Conclusion

In the end, the procedures employed by this Court's majority in deciding the State's petition for mandamus relief and this Court's majority's substantive assessment of the petition were so ingrained with flaws as to make one wonder whether human beings, however educated or well intentioned, are capable of determining that an execution is warranted. Here, Holiday was executed after the trial court decided that he had valid arguments for recalling the warrant of execution, after two judges from this Court agreed that there was no valid basis for overturning the trial-court judge's ruling, and after a Supreme Court justice, Justice Sotomayor, expressed grave concerns for the legal representation of Holiday in the short period of time before his execution. Though one might argue that Blazek and Carter could have acted sooner than the morning of the execution, it may be equally reasonable to argue that they deserve a medal of honor for stepping in after Holiday had been abandoned by his attorneys and for pursuing a claim that would likely result in habeas relief. I acknowledge that almost everyone involved in this case, including the judges of this Court, was placed in a difficult position after the federal courts denied Sween's

motion for new appointed counsel. But issuing a show cause order against these attorneys or sanctioning them is not the proper response for the difficulties encountered that night. Under the totality of the circumstances, I conclude that this Court should use its discretion to decline to issue this show-cause order and, further, to refuse to sanction Blazek and Carter. With these comments, I respectfully dissent from this Court's majority order.

Filed: December 16, 2015

Publish